[Cite as *Ohio Council 8 v. Marion*, 2016-Ohio-1144.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

OHIO COUNCIL 8, ET AL.,

    PLAINTIFFS-APPELLEES,                CASE NO.  9-15-31

    v.

CITY OF MARION,                           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 15-CV-0007

Judgment Reversed and Cause Remanded

Date of Decision:  March 21, 2016

APPEARANCES:

    *Mark D. Russell* **for Appellant**

    *Michael D. Batchelder*  **for Appellees**

**ROGERS, J.**

{¶1} Defendant-Appellant, the city of Marion ("the City"), appeals the judgment of the Court of Common Pleas of Marion County, which denied its motion for summary judgment and granted Plaintiffs-Appellees', Ohio Council 8 and Local 1158 ("Appellees"), motion for summary judgment. For the reasons that follow, we reverse the ruling of the trial court.

{¶2} On January 6, 2015, the Appellees filed an application and motion to compel arbitration in the Court of Common Pleas of Marion County. The Appellees named the City as the defendant. In their motion, the Appellees alleged that they entered into a collective bargaining agreement ("CBA") with the City. The CBA contained a four-step procedure to follow in the event of a grievance. The Appellees stated that the City breached the CBA when it imposed a "Healthcare Fee" on all bargaining unit employees. The Appellees alleged that they followed all the procedures and were entitled to have this dispute decided through arbitration. The Appellees attached several exhibits to their motion, including a copy of the CBA.

{¶3} Appellees filed a motion for summary judgment on February 10, 2015. The City filed a motion to dismiss on February 10, 2015. On February 19, 2015, the City filed its motion contra to the Appellees' motion for summary

judgment as well as its memorandum in support of its motion to dismiss. Appellees filed their response to the City's motion to dismiss on March 2, 2015.

{¶4} The trial court denied both Appellees' motion for summary judgment and the City's motion to dismiss on March 18, 2015. The trial court granted both parties leave to file any other dispositive motions until June 5, 2015.

{¶5} On June 5, 2015, the Appellees filed their second motion for summary judgment. Attached to the Appellees' motion were joint stipulations filed by both parties. Two of the parties' joint stipulations were

> 6. Whether or not the monies charged to the employee are a health care fee or a tax is a material fact.
>
> * * *
>
> 10. It is not disputed the power to levy taxes is with the Federal, State and Local governments and the [CBA] does not provide employees any benefit related in any way to the reallocation, pick up or any shifting of paying applicable taxes from the employee to the employer.

(Docket No. 15 Ex. A., p. 1-2). In their motion, the Appellees argued that their grievance with the City was subject to arbitration because a reasonable interpretation of the CBA was that the "Healthcare Fee" fell under the City's responsibility pursuant to Article 18 of the CBA.

{¶6} The City filed its motion contra to the Appellees' motion for summary judgment on June 18, 2015. In its motion, the City argued that the grievance was not subject to arbitration because the "Healthcare Fee" was a tax. Additionally,

the City argued that the Appellees' grievance did not meet the CBA's definition of "grievance."

{¶7} On July 22, 2015, the trial court granted the Appellees' motion for summary judgment. In its decision, the court found that the arbitration agreement in the CBA was generally broad. After reviewing the language of the CBA, the court concluded that the Appellees had filed a grievance, followed the necessary procedures, and were entitled to have their grievance decided through arbitration.

{¶8} The City filed this timely appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERROR [SIC] IN GRANTING APPELLEES [SIC] MOTION FOR SUMMARY JUDGMENT BY ERRANTLY FINDING THE CONTRACTUAL ARBITRATION CLAUSE APPLIES WHEN ONE SIDE SIMPLY "ALLEGES" THERE HAS BEEN A BREACH, MISSAPPLICATION [SIC], OR MISINTERPRETATION OF THE COLLECTIVE BARGAINING AGREEMENT.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED IN GRANTING APPELLEE'S [SIC] MOTION FOR SUMMARY JUDGMENT BY FINDING THE PARTY'S [SIC] COLLECTIVE BARGAINING AGREEMENT CONTAINED A PROVISION WHICH APPLIED TO THE FEDERAL GOVERNMENT'S IMPOSITION OF THE AFFORDABLE CARE ACT'S MANDATED COSTS CREATED UNDER 45 CFR PART 153.**

{¶9} Due to the nature of the City's assignments of error, we elect to address them together.

*Assignments of Error Nos. I & II*

{¶10} In its first and second assignments of error, the City argues that the trial court erred when it granted summary judgment in favor of the Appellees. We agree.

{¶11} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). However, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the

[nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶12} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

{¶13} Arbitration is encouraged as a method of settling disputes. *See Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998).

> A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected.

*Id.* at 471. In this case, we must determine whether the CBA " 'creates a duty for the parties to arbitrate the particular grievance,' " which is a question for the trial court, and not the arbitrator. *LeROI Internatl., Inc. v. Gardner Denver Mach.,*

*Inc.*, 3d Dist. Shelby No. 17-03-20, 2004-Ohio-4163, ¶ 18, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666 (1998). "However, while the general policy is to favor arbitration, that policy should be denied effect when 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 9 (3d Dist.), quoting *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 173 (8th Dist.1986).

{¶14} The United States Supreme Court summarized four general principles when considering the scope of an arbitration clause. *See Gates* at 665-666, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

> The first principle is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.'
>
> The second principle is that 'the question of arbitrability-whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'
>
> The third rule is, 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'

> The fourth principle is that 'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'

(Quotations omitted.) (Citations omitted.) *Gates* at 665-666, quoting *AT & T Technologies* at 648-650.

**{¶15}** "When an appellate court reviews a trial court's decision to stay judicial proceedings pursuant to the parties' agreement to enter into arbitration, we accept the trial court's 'findings of fact that are not "clearly erroneous," ' but we review questions of law de novo." (Citation omitted.) *Barhorst* at ¶ 10, quoting *LeROI* at ¶ 6, citing *Lear v. Rusk Inds., Inc.*, 3d Dist. Hancock No. 5-02-26, 2002-Ohio-6599, ¶ 8. "In interpreting an arbitration clause, courts must apply the fundamental principles of Ohio contract law." *LeROI* at ¶ 7, citing *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, ¶ 31-34. Words in a contract must "be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus, *superseded by statute on other grounds as stated in Great Invest. Properties, L.L.C. v. Bentley*, 3d Dist. Marion No. 9-09-36, 2010-Ohio-981, ¶ 14. "If a contract is clear and unambiguous, then its interpretation is a

matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984).

{¶16} In its first assignment of error, the City argues that the trial court erred by finding that the arbitration clause is triggered when the Appellees make an allegation that there has been a breach, misapplication, or misinterpretation of the CBA. Upon review of the CBA, the trial court did not err in its finding.

{¶17} In Article 7 of the CBA, entitled Grievance and Arbitration Procedure, the parties agreed to what would trigger arbitration. Section 1(A) states, "The term 'grievance' means that the [Appellees are] *alleging there has been a breach, misapplication, or misinterpretation* of this Agreement." (Emphasis added.) (Docket No. 1 Ex. A, p. 9). Thus, the plain language of the CBA states that all Appellees had to do was allege that a breach, misapplication, or misinterpretation had occurred.

{¶18} The City suggests that the plain language of the CBA requires that there actually be a breach, misapplication, or misinterpretation of the CBA before going to arbitration. In addition to the reasoning stated supra, if we were to accept the City's interpretation, then the Appellees would never get to arbitrate anything because a trial court would decide the ultimate issue as to whether there was a breach, misapplication, or misinterpretation. Therefore, the trial court did not err

by finding that the Appellees' grievance constituted a "grievance" under the CBA's definition.

{¶19} Accordingly, the City's first assignment of error is overruled.

{¶20} In its second assignment of error, the City argues that the trial court erred by finding that there was a reasonable interpretation of the arbitration clause that covered the dispute. We agree.

{¶21} This case turns on the issue of whether or not the "Healthcare Fee" is categorized as a tax. In the joint stipulations, both parties agree that whether the "Healthcare Fee" is a fee or a tax is a material fact. Further, both parties agree that the CBA does not cover taxes. Specifically, the CBA "does not provide employees any benefit related in any way to the reallocation, pick up or any shifting of paying applicable taxes from the employee to the employer." (Docket No. 15 Ex. A, p. 2). Thus, if the "Healthcare Fee" is categorized as a tax, then there is no interpretation of the CBA that would cover the Appellees' claim.

{¶22} Specifically, the "Healthcare Fee" is a payment made by either health insurance issuers or group health plans to fund the transitional reinsurance program, which is part of the Patient Protection and Affordable Care Act of 2010 ("ACA"). 42 U.S.C. 18061(b)(1)(A). The ACA provides that the revenues generated from these payments are estimated to be $25 billion. *State of Ohio, et al. v. United States, et al.*, S.D.Ohio No. 2:15-cv-321, 2016 WL 51226, *3 (Jan. 5,

2016) ("*State of Ohio*"), *appeal filed on* Feb. 4, 2016. $20 billion directly funds the reinsurance program, while the remaining $5 billion is deposited into the general fund of the United States Treasury. *Id.*

{¶23} In *State of Ohio*, which is the only case that has dealt substantively with the reinsurance program, there was no dispute about whether the payment required under the reinsurance program was a tax. Rather, the issue in *State of Ohio* was whether the reinsurance program portion of the ACA applied to government-operated group health plans. *Id.* at *2. The district court found in the affirmative. *Id.* at *36. Importantly, "the State conceded that the Transitional Reinsurance Program imposes a nondiscriminatory tax." *Id.* at *34. Although this opinion is not binding upon this court, it is nonetheless heavily persuasive on the issue.

{¶24} Black's Law Dictionary defines a "tax" as "[a] charge, usu. monetary, imposed by the government on persons, entities, transactions, or property to yield public revenue." *Black's Law Dictionary* 1685 (10th Ed.2014). It is also defined as "a usu. pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes." *Webster's Third New International Dictionary* 2345 (2002).

{¶25} Given the definition of a "tax," there is no other possible conclusion to draw other than the payment required under the reinsurance program is a tax.

The payments are imposed by the federal government, are required to be paid by two types of entities (issuers and group health plans), and are used to generate public revenue (fund the reinsurance program and deposit funds into the federal treasury).

{¶26} Since the "Healthcare Fee" is a tax, the next question is whether this type of tax is covered under the CBA. This seemingly difficult question is actually easy in this case. Pursuant to their joint stipulations, both parties agree that the CBA does not cover disputes involving taxes. Thus, there was no genuine issue of material fact, however the Appellees were not entitled to judgment on the issue of arbitration as a matter of law. Thus, the trial court erred by granting the Appellees' motion for summary judgment and denying the City's motion contra.

{¶27} Accordingly, we sustain the City's second assignment of error.

{¶28} Having found error prejudicial to the appellant, in some of the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**