[Cite as *Estate of Myers v. Healthcare Ventures of Ohio, L.L.C.*, 2023-Ohio-4254.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

THE ESTATE OF SANDRA MYERS,

    PLAINTIFF-APPELLEE,

        CASE NO. 11-23-04

    v.

HEALTHCARE VENTURES OF
OHIO, LLC, dba THE GARDENS
OF PAULDING, ET AL.,

        O P I N I O N

    DEFENDANTS-APPELLANTS.

---

**Appeal from Paulding County Common Pleas Court**
**Trial Court No. CI 20 020**

**Judgment Affirmed**

**Date of Decision:  November 27, 2023**

---

**APPEARANCES:**

    *Jason P. Ferrante* **for Appellants**

    *Michael A. Hill* **and** *Madeleine M. Skora* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendants-appellants Healthcare Ventures of Ohio, LLC dba The Gardens of Paulding, et al. ("The Gardens") bring this appeal from the judgment of the Court of Common Pleas of Paulding County denying the motion to stay the proceedings and compel arbitration. On appeal The Gardens claims that the trial court erred by failing to hold a hearing on the motion and by denying the motion. For the reasons set forth below, the judgment is affirmed.

*Factual Background*

{¶2} In 2016, Sandra Myers ("Myers") came to live at the assisted living portion of The Gardens. At that time, Myers signed her admission documents, which included an arbitration agreement. She remained at The Gardens until 2019 when she developed a deep vein thrombosis in her leg which required surgery at an outside hospital. When Myers returned on March 13, 2019, she was placed in the rehabilitation portion of The Gardens rather than returning to the assisted living portion. On March 26, 2019, Myers was readmitted to the hospital with an infection. She was subsequently returned to The Gardens in the skilled nursing unit. Prior to her being admitted to the skilled nursing unit, Myers signed new admission documents. These documents did not include an arbitration agreement. On April 1, 2019, Myers was again admitted to the hospital when her wound got worse. Upon her release from the hospital, Myers' family placed her in a different facility until her death on April 26, 2019. Myers' death certificate indicated that Myers died from

sepsis related to the wound infection. The Ohio Department of Health subsequently cited the Gardens for providing substandard care.

*Procedural Background*

{¶3} On February 13, 2020, plaintiff-appellee the Estate of Sandra Myers ("the Estate") filed a complaint alleging that 1) The Gardens was negligent in its care of Myers, 2) the negligence resulted in the wrongful death of Myers, 3) The Gardens violated her rights as a resident of a nursing home, and 4) The Gardens breached its contract with Myers. The Gardens filed its answer on March 16, 2020. As part of its answer, The Gardens alleged that the Estate had failed to comply with the requirements of the arbitration agreement.

{¶4} On June 23, 2020, The Gardens filed a motion to stay the proceedings and compel arbitration. The motion claimed that the arbitration agreement signed in 2016 was still in effect and that the matter needed to be referred to arbitration. The Estate filed its response in opposition to the motion on July 20, 2020. The Estate argues that the arbitration agreement signed by Myers was not applicable to the wrongful death claim. The Estate also argued that the arbitration agreement did not apply because it only applied to the assisted living facility, not the skilled nursing facility and that the Estate did not sign an arbitration agreement. The Gardens filed its reply to the Estate's response on July 27, 2020. The trial court then scheduled a hearing on the motion for November 19, 2020.

{¶5} On November 17, 2020, the Estate filed a motion to be permitted to conduct discovery on the formation of the arbitration agreement. The motion claimed that Myers would have been unable to read the print of the arbitration agreement due to her impaired vision which required her to have large print to read anything. The trial court proceeded to hold the November 19, 2020 hearing on the motion to stay the proceedings and compel arbitration as well as the Estate's motion for discovery. At the conclusion, the trial court ordered as follows.

1. [The Gardens] shall respond to [the Estate's] Motion to Permit Discovery on Formation of Arbitration Agreement by November 24, 2020.

2. [The Estate] shall reply to [The Garden's] response by December 1, 2020.

3. The Court will then take the matter under advisement and render a decision or set the matter for hearing.

Doc. 14. The Gardens filed its brief in opposition to the motion to permit discovery on November 25, 2020. The Estate filed its reply on December 1, 2020. On September 21, 2021, the trial court granted the motion to permit discovery regarding the arbitration agreement.

{¶6} On April 15, 2022, the Estate filed a motion to find the Garden's arbitration agreement unenforceable. The Estate claimed that the skilled nursing facility was a separate and distinct facility from the assisted living facility despite both of them being operated by the same entity. The Estate points to them having different staff members, providing different levels of care, and being subject to

-4-

different state and federal regulations. The Estate also pointed to the paperwork signed by Myers in 2019 before entering the skilled nursing facility indicating an admission date of March 13, 2019, not the original 2016 date when the arbitration agreement was signed. The new admission documents did not include an arbitration agreement. The record does not indicate that The Gardens filed any response to the Estate's motion.

{¶7} On August 17, 2022, the trial court ruled on the outstanding motions of the parties. The trial court determined that based upon the evidence before it, the admission to the assisted living facility and the admission to the skilled nursing facility were two separate processes. While there would be no issue of applying the arbitration agreement to any claims arising from Myers' time in the assisted living facility, the claims in this case did not arise during that time. The trial court noted that during the admission into the skilled nursing facility, Myers was presented with a 60 page admission packet which did not include an arbitration agreement. The trial court also noted that the skilled nursing facility packet checklist had a line labeled "Review Arbitration Agreement", but none was executed at that time. Additionally, the testimony of the admissions director in her deposition provided that when a patient was moved from the assisted living facility to the skilled nursing facility, the patient would be discharged from the assisted living facility and a full admission would be done to enter the skilled nursing facility. Based upon this, the trial court denied the motion to stay the proceedings and compel arbitration and

granted the motion to find the arbitration agreement unenforceable in this matter. The Gardens filed an appeal from this judgment.

{¶8} On appeal, The Gardens raises the following assignments of error.

**First Assignment of Error**

**The trial court erred and abused its discretion by not holding a hearing regarding the enforcement of the arbitration agreement as required by R.C. 2711.**

**Second Assignment of Error**

**The trial court erred and abused its discretion by not staying the entire matter pending complete arbitration of all claims arbitrable as required by R.C. 2711.**

{¶9} In the first assignment of error, The Gardens claims that the trial court erred by failing to hold a hearing on the motion to enforce the arbitration agreement. R.C. 2711.03(A) provides that if a party petitions a court to compel arbitration, "[t]he court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement." Although a court may hold an oral hearing to comply with the statutory requirements, a non-oral hearing via briefs and depositions would also fulfill the statutory requirements of allowing the parties to be heard. *Liese v. Kent State University*, 11th Dist. Portage No. 2003-P-0033, 2004-Ohio-5322. "The 'hearing' required in R.C. 2711.03 is interpreted as any confrontation, oral or otherwise, 'sufficient to allow the individual to present the

case in a meaningful manner' and such a hearing may take the form of a court hearing or a paper hearing without oral exchange between the parties. *Nemec v. Morledge*, 8th Dist. Cuyahoga No. 110149, 2021-Ohio-3361, ¶ 18 citing *Liese* at fn. 6.

{¶10} A review of the record shows that a hearing via zoom was held on the motion on November 19, 2020. No transcript was provided, so this Court is unable to review what occurred during the hearing. However, the record shows that the trial court did enter orders for both sides to provide briefs on the matters before the trial court. The trial court then stated that it would "take the matter under advisement and render a decision or set the matter for hearing." The judgment entry also indicates that counsel for both the Estate and The Gardens attended the meeting via zoom. Given that both parties were provided notice of the hearing in advance, both should have attended prepared to present whatever evidence they wished. Although the statute states that the trial court should "hear" the parties, it does not require multiple oral hearings. Both sides had ample time to file whatever additional information they wished the trial court to consider prior to the trial court issuing its judgment entry nearly two years after the hearing.

{¶11} The Gardens argues that the hearing on November 19 was not substantive because the Estate asked for discovery regarding the formation of the arbitration agreement. However, without a transcript, this Court has no ability to

review what occurred during that hearing.[1]  Additionally, The Gardens did provide a brief in opposition to the Estate's motion to permit discovery on the formation of the arbitration agreement.  This brief included multiple exhibits, but did not request a further hearing.  After the trial court granted the Estate's motion to conduct discovery on the formation of the agreement, the parties had months in which discovery was conducted.  At no time did either party request another oral hearing be held.  The Estate filed its motion to find the arbitration agreement unenforceable on April 15, 2022.  The motion had several exhibits attached to it including an affidavit of an expert witness and depositions of employees of The Garden, but did not request an oral hearing on the motion.  The trial court entered judgment in August of 2022, four months after the Estate filed its motion.  The Gardens failed to file a response to the Estate's motion during those four months, did not present any additional evidence, and did not request an additional hearing.  The trial court, by the language of its November 2020 journal entry, indicated that there might not be a second hearing when it stated that it would take the matter under advisement.  Given the facts before this Court, we do not find that the trial court erred by failing to grant a second oral hearing on the matter.  The first assignment of error is overruled.

---

[1] The burden of providing a transcript to show what did or did not occur at a hearing falls on the appellants. App.R. 9

*Stay for Arbitration*

**{¶12}** The Gardens claims in its second assignment of error that the trial court abused its discretion by not granting the motion to stay for arbitration. An appellate court generally reviews a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard. *U.S. Bank Natl. Assn. v. Allen*, 3d Dist. Paulding No. 11-15-09, 2016-Ohio-2766, ¶ 26, 52 N.E.3d 1237. "An abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable." *Id.*

**{¶13}** The Gardens claims that the trial court erred by 1) finding that the agreement did not apply to Myers' stay in the skilled nursing facility and 2) finding that the agreement was unconscionable.[2] The trial court did not find the arbitration agreement signed by Myers in 2016 was unconscionable. The trial court specifically stated that "[i]f the dispute arose during the time that [Myers] was a resident of the Assisted Living unit of [The Gardens], there would be little, if any doubt that [Myers] intended to be a party to the arbitration agreement." Doc. 27 at 5. Instead, the trial court found that the agreement did not apply in this case because Myers was no longer in the assisted living facility, but instead had been admitted to the skilled nursing facility with a new admission packet, which did not include an arbitration

---

[2] The trial court did not find the agreement to be unconscionable.

agreement.  Since the trial court did not find the agreement to be unconscionable, there is no alleged error to review.

{¶14}  The only question resolved by the trial court, and thus subject to appeal, was whether the arbitration agreement applied to Myers' time in the skilled nursing facility.  If the answer to this question is yes, then the terms of the arbitration agreement would apply.  However, if the agreement does not apply, then the terms of the agreement are irrelevant to this case.  The Gardens essentially is arguing that the trial court's determination that the agreement did not apply to Myers' time in the skilled nursing facility is against the manifest weight of the evidence.  Appellate courts will not disturb a trial court's factual determinations as being against the manifest weight of the evidence where the record contains competent, credible evidence to support the findings.  *Cintas Corporation v. Findlay Chrysler Dodge, Jeep, Ram, Inc.*, 3d Dist. Hancock No. 5-17-14, 2018-Ohio-455, ¶ 17, 94 N.E.3d 606.  "In analyzing a trial court's decision, 'it is also important that * * * a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.'"  *Id*. quoting *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984).

{¶15} The parties do not dispute that a second arbitration agreement was not completed when Myers signed admission documents to enter the skilled nursing facility in 2019.  The Gardens argues in its motion to compel that the arbitration agreement signed in 2016 when Myers entered the assisted living facility transferred

over to her admission to the skilled nursing facility, thus requiring the majority of the issues to be stayed pending arbitration. In support of this argument, The Gardens presented a copy of the arbitration agreement signed in 2016.

{¶16} On April 15, 2022, the Estate filed its motion to find the arbitration agreement unenforceable and argued that the contract to arbitrate did not apply because the skilled nursing facility was a separate and distinct unit from the assisted living facility. The Estate argued that the facilities were separate because a new set of admission documents were completed and the new contracts did not include an arbitration agreement. The Estate supported its claims by providing an affidavit of Channa Kelly ("Kelly"). Kelly indicated in her affidavit that she had been qualified as an expert in assisted living and skilled nursing facility administration and that her opinions were based upon her training and experience in the field. Kelly noted that although Myers had signed an arbitration agreement upon her admission to the assisted living facility in 2016, the 2019 admission documents for the skilled nursing facility did not include an arbitration agreement. The documents also indicated that the 2019 admission documents indicated that she entered the skilled nursing facility on March 13, 2019, without reference to the prior admission to the assisted living facility. Kelly stated that assisted living facilities and skilled nursing facilities "are separate and distinct facilities that offer different levels of care to their residents and are subject to completely different regulations." The affidavit then contained the following statements.

16. Because skilled nursing facilities provide substantial nursing care and more extensive assistance with activities of daily living, residents are giving up different rights when they sign an arbitration agreement at a skilled nursing facility versus an assisted living facility.

17. Given the above substantial differences, it is standard practice in the long-term care industry to have residents execute a separate arbitration agreement when they are admitted to the skilled nursing facility of a continuing care community such as [The Gardens] after having previously been a resident of the assisted living facility at the same continuing care community.

18. [Myers] went to [The Gardens] on September 15, 2016 to live at their Assisted Living facility. She signed an arbitration agreement on September 15, 2016 in relation to her becoming a resident at [The Gardens'] Assisted Living facility, not the Skilled Nursing Facility. The September 15, 2016 signed arbitration agreement that was executed upon [Myers'] admission to the assisted living facility related to rights [Myers] was giving up in relation to her residency at [The Gardens'] Assisted Living Facility.

19. Based on my experience as both an assisted living facility executive director and skilled nursing facility administrator, a reasonable patient would not expect an arbitration agreement that they signed at an assisted living facility to apply to their subsequent residency at a skilled nursing facility, even if the skilled nursing facility was owned by the same entity as part of a "continuing care community".

Ex. 2 at 2-3.

{¶17} The Estate presented a portion of a deposition of Misty Brehm ("Brehm") as Exhibit 3. Brehm testified that she had previously been the director of admissions at the Gardens before she returned to her position as a floor nurse. Brehm testified that at the Gardens, a person who was living in the assisted living facility who went into the hospital and then needed to be transferred to the skilled

-12-

nursing facility would be discharged from the assisted living side. A new full admission packet would then be completed at the skilled nursing facility.

**{¶18}** A portion of the deposition of Renee Hunt ("Hunt") was submitted as Exhibit 4. Hunt testified that when Myers came into the skilled nursing facility, a new 60 page admissions packet was completed with an initial admission date of March 13, 2019. Exhibit 5.3 was the admissions checklist completed for Myers and did not include an arbitration agreement. This checklist showed that the Gardens went through the process of admitting her by completing admission agreements, obtaining insurance information, reviewing the rate schedule, and reviewing the resident handbook and obtaining signatures for these items. At the bottom of the form was a box left blank regarding what the prior balance was if this is a readmission. Exhibits 5.2 was a revised version of the checklist utilized starting in August 2019 and now included a line to review the arbitration agreement.

**{¶19}** As noted above, these filings were made by the Estate on April 15, 2022. The filing noted that a copy of the motion was served upon counsel for The Gardens and no one argues that it was not properly served. However, The Gardens did not file any response to the motion. Four months later the trial court ruled on the motions, granting the Estate's motion and denying The Gardens' motion. The trial court's basis for finding that the arbitration agreement did not apply was the finding that the admission to the skilled nursing facility was separate and apart from the admission to the assisted living facility. The trial court noted that Myers had

not signed an agreement to arbitrate any disputes regarding her rights at the skilled nursing facility. Without the agreement, there was no contract to arbitrate, so the Estate could not be compelled to do so. The trial court pointed to the testimony of Brehm that a patient would be discharged from the assisted living facility and then a new admission to the skilled nursing facility would occur. The trial court also considered the affidavit of Kelly stating that it was standard practice in the industry to have residents execute a separate arbitration agreement when admitted to a skilled nursing facility after previously being a resident of an assisted living facility.

{¶20} The Supreme Court of Ohio has set forth four principles that guide determinations of arbitrability. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 10, 842 N.E.2d 488.

> "The first principle is that ' "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.' *AT & T Technologies*, 475 U.S. at 648–649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting [*United Steelworkers of Am. v.] Warrior & Gulf [Navigation Co*. (1960) ], 363 U.S. [574] at 582, 80 S.Ct. [1347] at 1353, 4 L.Ed.2d [1409] at 1417.

> "The second principle is that 'the question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' *Id*., 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

"The third rule is, 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.' *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

"The fourth principle is that 'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra*, 363 U.S. at 582–588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417."

*Id*. at ¶11-14 quoting *Council of Smaller Enterprises v. Gates, McDonald & Co*., 80 Ohio St.3d 661, 665-666, 1998-Ohio-172, 687 N.E.2d 1352.  The trial court in this case determined that there was no arbitration agreement between Myers and the skilled nursing facility of The Gardens.  The findings of the trial court are supported by competent, credible evidence.  Although The Gardens disputes the evidence presented by the Estate, The Gardens failed to present any contradictory evidence to the trial court.  Given the evidence before the trial court, the findings of the trial court that the 2016 arbitration agreement signed upon admission to the assisted living facility did not apply to the 2019 admission to the skilled nursing facility was not an abuse of discretion and was not against the manifest weight of the evidence.  The second assignment of error is overruled.

{¶21} Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Court of Common Pleas of Paulding County is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and WALDICK, J., concur.**

**/hls**