[Cite as *McCreary v. Taylor Cadillac, Inc.*, 2025-Ohio-2562.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

TIAH MCCREARY,

     PLAINTIFF-APPELLANT,

  v.

TAYLOR CADILLAC, INC., ET AL.,

     DEFENDANTS-APPELLEES.

CASE NO. 1-24-67

OPINION AND
JUDGMENT ENTRY

---

Appeal from Allen County Common Pleas Court
Trial Court No. CV2024 0191

Judgment Reversed in Part, Affirmed in Part and Cause Remanded

Date of Decision:  July 21, 2025

---

APPEARANCES:

    *Randy L. Reeves* for Appellant

    *Peter A. Demczuk* for Appellees

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Tiah McCreary ("McCreary") appeals the judgment of the Allen County Court of Common Pleas, arguing that the trial court erred in granting the motion to compel arbitration filed by Defendant-Appellee Taylor Cadillac, Inc. ("Taylor Cadillac"), D.B.A. Taylor Kia of Lima ("Taylor Kia"). For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶2} In 2012, Taylor Cadillac opened a dealership in Lima, Ohio and conducted a portion of their operations under the trade name "Taylor Kia of Lima." On February 29, 2024, McCreary went to Taylor Kia in search of a vehicle and selected a car. Justin Nance ("Nance"), the finance and insurance manager at the dealership, then presented McCreary with a series of documents that he reviewed with her. McCreary signed a Retail Buyers Order ("RBO") in addition to several other documents. Nance then placed a copy of her electronic signature onto an arbitration agreement.

{¶3} To assist with the process of obtaining financing, Nance helped McCreary submit her information to Global Lending Services, LLC ("GLS"). Once GLS had provided preliminary approval for a loan in the required amount, McCreary left the dealership in a 2022 Kia K5. However, GLS subsequently

concluded that the available information regarding McCreary's income was not sufficient to substantiate a loan in the requested amount and finalize approval for her loan. In the absence of financing, McCreary's vehicle was repossessed by the dealership while she was at work on March 29, 2024.

{¶4} In the process of evaluating her legal options, McCreary discovered that the registration for the name "Taylor Kia of Lima" had been cancelled by the Ohio Secretary of State's Office after Taylor Cadillac had failed to submit a renewal application. In response, McCreary decided to register "Taylor Kia of Lima" in her name. She then sent a cease and desist letter to Taylor Cadillac that addressed their continued use of a fictitious name that was now registered to her.

{¶5} On June 28, 2024, McCreary filed a complaint that named Taylor Cadillac and GLS as defendants. McCreary's complaint alleged various violations of the Consumer Sales Practices Act; demanded a return of funds from GLS; and raised claims of fraud, conversion, and unjust enrichment. McCreary also requested an injunction that would prohibit Taylor Cadillac from continuing to transact business under the name "Taylor Kia of Lima" without her consent.

{¶6} On September 16, 2024, Taylor Cadillac and GLS filed a motion to compel arbitration alongside a copy of an arbitration agreement that bore McCreary's signature. Taylor Cadillac submitted an affidavit from Nance that averred he had reviewed this agreement with McCreary and placed an electronic copy of her signature onto this document with her authorization. In response,

McCreary filed an affidavit in which she indicated that she had signed the RBO but denied authorizing Nance to place her electronic signature onto the arbitration agreement. On October 3, 2024, the trial court granted Taylor Cadillac's motion to compel arbitration and dismissed the case without prejudice.

{¶7} McCreary filed her notice of appeal on October 31, 2024. On appeal, she raises the following four assignments of error:

### First Assignment of Error

**The court erred in granting Defendants' motion to enforce a binding arbitration agreement when Plaintiff disputed that the agreement was reviewed with Plaintiff or approved by her and that her signature was placed on the document without her knowledge or consent.**

### Second Assignment of Error

**The court erred in granting Defendants' motion to enforce a binding arbitration agreement allegedly entered into along with a contract for the purchase of a motor vehicle with Plaintiff using the unregistered fictitious name of Taylor Kia of Lima.**

### Third Assignment of Error

**The court erred in granting Defendants' motion to enforce a binding arbitration agreement on the separate claim against Taylor Cadillac Inc. for using the fictitious name of Taylor Kia of Lima after the name was registered to Plaintiff.**

### Fourth Assignment of Error

**The court erred when it dismissed Appellant's action submitting the parties to binding arbitration when the terms of the arbitration were unconscionable.**

**Fifth Assignment of Error**

**The court erred in granting Defendants' motion to enforce a binding arbitration agreement on claims filed against Global when it was never a party to any agreement or an assignee of any agreement.**

*First Assignment of Error*

{¶8} McCreary argues that the arbitration agreement is not enforceable because she did not consent to having her signature placed on that agreement.

Legal Standard

{¶9} The General Assembly has embraced a public policy that favors arbitration as promoting efficient dispute resolution and judicial economy. *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15-16, citing R.C. 2711.01(A). For this reason, a strong presumption in favor of arbitration requires that "all doubts be resolved in its favor." *Id*. at ¶ 15. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Estate of Myers v. Healthcare Ventures of Ohio, LLC*, 2023-Ohio-4254, ¶ 20 (3d Dist.), quoting *Academy of Medicine of Cincinnati v. Aetna Health, Inc*., 2006-Ohio-657, ¶ 10.

{¶10} "The Ohio Arbitration Act allows for direct enforcement of arbitration agreements through an order to compel arbitration under R.C. 2711.03 . . . ." *Costin v. Midwest Vision Partners, L.L.C*., 2024-Ohio-463, ¶ 16 (8th Dist.). As the initial step under this provision,

> [t]he party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of

> common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement.

R.C. 2711.03(A). After hearing the parties on such a motion, the trial court is to order the parties to proceed to arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue. . . ." R.C. 2711.03(A).

{¶11} "If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under . . . [R.C. 2711.03(A)], the court shall proceed summarily to the trial of that issue." R.C. 2711.03(B). *See KeyBank, N.A. v. David*, 2024-Ohio-5333, ¶ 42 (7th Dist.). "When determining whether a trial is necessary under R.C. 2711.03(B) . . . , the relevant inquiry is whether a party has questioned the validity or enforceability of the arbitration provision and presented sufficient evidence to [substantiate the] challenge." *Pyle v. Wells Fargo Financial*, 2004-Ohio-4892, ¶ 15 (10th Dist.). *See also Garcia v. Wayne Homes, LLC,* 2002 WL 628619, *6 (2d Dist. Apr. 9, 2002); *Church v. Fleishour Homes, Inc.*, 2007-Ohio-1806, ¶ 26 (5th Dist.); *Yoby v. Cleveland*, 2023-Ohio-2180, ¶ 18 (8th Dist.).

{¶12} In determining whether an arbitration agreement is valid and enforceable, courts apply the principles of contract law. *Gibbs v. Firefighters Community Credit Union*, 2021-Ohio-2679, ¶ 14 (8th Dist.). "Ohio contract law includes the doctrine of incorporation by reference." *Volovetz v. Tremco Barrier Solutions, Inc.*, 2016-Ohio-7707, ¶ 26 (10th Dist.). Under this doctrine,

> when a document is incorporated into a contract by reference, that document becomes part of the contract. [*KeyBank Natl. Assn. v. Columbus Campus, L.L.C.*, 2013-Ohio-1243, ¶ 21 (10th Dist.)]. The parties to the contract need not separately execute the incorporated document in order to be bound by its terms. *Garcia v. Wayne Homes*, 2002-Ohio-1884, ¶ 44 (2d Dist.). Rather, a party to a contract, which incorporates terms contained in another document, has a duty to review the contract and those documents incorporated into it before signing the contract.
>
> In general, 'the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including . . . a separate document which is unsigned[,]' if 'the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.' 11 Lord, Williston on Contracts, Section 30:25, at 294-301 (4th Ed. 2012). Consequently, 'mere reference to another document is not sufficient to incorporate that document into a contract; the contract language must also clearly demonstrate that the parties intended to incorporate all or part of the referenced document.' *Volovetz* . . . [at] ¶ 27.

*Bennett v. KeyBank, N.A.*, 2020-Ohio-1152, ¶ 24 (6th Dist.). *See also Marietta v. Professional Service, Industries, Inc*., 2025-Ohio-1530, ¶ 31-32 (4th Dist.); *HB Martin Logistics, Inc. v. Hissong Group, Inc*., 2023-Ohio-4836, ¶ 26-27 (9th Dist.).

{¶13} "Documents that are incorporated by reference into a contract are to be read as though they are restated in the contract." *Blanchard Valley Farmers Coop., Inc. v. Carl Niese & Sons Farms, Inc*., 143 Ohio App.3d 795, 802 (3d Dist. 2001). *See also O'Brien & Associates Co., L.P.A. v. East Worthington, L.L.C.*, 2023-Ohio-3494, ¶ 18 (10th Dist.) (noting that the Revised Code Chapter 2711 requires an arbitration agreement to be in writing but contains no specific requirements as to whether such agreement must be separately signed).

Standard of Review

{¶14} "In general, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration under the abuse of discretion standard of review." *Autovest, LLC v. Hicks*, 2025-Ohio-111, ¶ 13 (8th Dist.), quoting *Simmons v. Extendicare Health Services, Inc*., 2016-Ohio-4831, ¶ 13 (5th Dist.).  An abuse of discretion is more than an error of judgment but is present where a decision is arbitrary, unreasonable, or unconscionable.  *New Technology Products Pty Ltd. v. Scotts Miracle-Gro Co*., 2022-Ohio-3780, ¶ 14 (3d Dist.).

{¶15} However, when a decision on a motion to compel arbitration rests upon the interpretation of a contractual provision, a de novo standard of review will be applied on appeal.  *Spearman v. Am. Elec. Power Co., Inc*., 2015-Ohio-928, ¶ 11 (3d Dist.).  *See also Brown v. JC Austintown, Inc*., 2023-Ohio-553, ¶ 17-18 (7th Dist.).  De novo review does not give deference to the determination of the trial court but is conducted independently by the appellate court.  *Sullinger v. Sullinger*, 2020-Ohio-5225, ¶ 17 (3d Dist.).

Legal Analysis

{¶16} In this case, Taylor Cadillac filed a motion to compel arbitration that cited R.C. 2711.03 and included a copy of an arbitration agreement that had purportedly been executed by McCreary on February 29, 2024.  This filing also included an affidavit from Nance in which he averred that he had reviewed the arbitration agreement with McCreary and that she had authorized him to place her

electronic signature onto this document. In response, McCreary filed an affidavit wherein she averred that no one had reviewed this arbitration agreement with her and that she did not separately authorize the placement of her electronic signature onto this document.

{¶17} After hearing the parties through these written motions, the trial court granted the motion to compel arbitration. *KeyBank*, 2024-Ohio-5333, ¶ 22; *Costin*, 2024-Ohio-463, ¶ 22 (discussing when a non-oral hearing is permissible under R.C. 2711.03). On appeal, McCreary argues that the trial court erred because she produced evidence that disputed whether she had separately authorized the placement of her signature onto the document that contained the arbitration agreement. While the authorization of the signature on the arbitration agreement is contested, neither party disputes that McCreary signed the RBO.

{¶18} The first page of the RBO contains the names of several other documents that are each listed next to a checkbox. This list includes the agreement to binding arbitration. Not all of the checkboxes next to the listed documents were filled in, but the checkbox next to the arbitration agreement contained an "X." The RBO states that the "agreement" includes "this Retail Buyers Order plus any other writing relative in any way to the purchase transaction noted on the face of this Retail Buyers Order." (Doc. 10, Ex. B).

{¶19} The language in the RBO not only directs the signatory to examine the attached arbitration agreement but also specifically states that the "terms and

conditions of this agreement [the RBO]" encompass "any documents which are a part of this transaction or incorporated herein by reference . . . ." (Doc. 1, Ex. C). We also note that, while McCreary's complaint included a jury demand, the face of the RBO expressly states that the signatories "waive and renounce the right under federal and state law to a trial by jury for any claim." (Doc. 1, Ex. C).

{¶20} The language in the RBO specifically indicates that the binding arbitration agreement was "incorporated . . . by reference." (Doc. 1, Ex. C). Since McCreary admits that she signed the RBO, she gave her assent to the terms of the documents that were incorporated by reference into the RBO. Thus, under the incorporation doctrine, she did not need to separately sign or execute the arbitration agreement to render its terms enforceable in this case. For this reason, the dispute over whether she authorized the placement of her signature on the separate arbitration agreement is immaterial to determining whether the arbitration agreement is valid and enforceable in this case.

{¶21} In summary, McCreary signed a document that incorporated the terms of the arbitration agreement. For this reason, the trial court did not need to address the question of whether McCreary signed the separate document that contained the arbitration agreement. Thus, these arguments fail to demonstrate that the trial court erred in concluding that the arbitration agreement was enforceable. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶22}** McCreary asserts that Taylor Cadillac could not file a motion to compel, seeking to have an arbitration agreement enforced through the unregistered fictitious name "Taylor Kia of Lima."

Legal Standard

**{¶23}** A "fictitious name" is defined as "a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name." R.C. 1329.01(A)(1). Pursuant to the various subsections of R.C. 1329.01,

> 'any person *may* register with the secretary of state, on a form prescribed by the secretary of state, any trade name under which the person is operating.' (Emphasis added.) R.C. 1329.01(B). If an entity declines to register a trade name with the secretary of state, then the name is, by default, a fictitious name. *See* R.C. 1329.01(D). In such a case, the entity is required to report the use of the fictitious name to the secretary of state. *Id*.

*Plain Dealer Publishing Co. v. Worrell,* 2008-Ohio-4846, ¶ 14 (9th Dist.).

**{¶24}** Under R.C. 1329.10(B), an entity that has not complied with these requirements lacks the capacity to commence or maintain an action in a trade name or fictitious name that has not been registered or reported. *See Oldendick v. Crocker,* 2016-Ohio-5621, ¶ 66 (8th Dist.). However, "[a]n action may be commenced or maintained *against* the user of a trade name or fictitious name whether or not the name has been registered or reported in compliance with [R.C.] 1329.01 . . . ." (Emphasis added.) R.C. 1329.10(C).

Legal Analysis

**{¶25}** On appeal, McCreary points out that the name "Taylor Kia of Lima" was not registered or reported in compliance with R.C. 1329.01 at the time the RBO was executed.[1] Since R.C. 1329.10(B) does not permit the user of an unregistered or unreported fictitious name to commence or maintain an action, she asserts that Taylor Cadillac could not file a motion to compel arbitration in this case.

**{¶26}** While R.C. 1329.10(B) indicates that the user of an unregistered or unreported name lacks the capacity to sue, R.C. 1329.10(C) indicates that such an entity can be sued. Thus, the appellant's "reliance on R.C. 1329.10(B) is misplaced" because Taylor Cadillac is "not commencing or maintaining an action, but rather simply defending" itself in a lawsuit brought by McCreary. *Koudela v. Johnson & Johnson Custom Builders*, *LLC*, 2017-Ohio-9331, ¶ 17 (11th Dist.).

**{¶27}** Next, McCreary suggests that the arbitration agreement was made with an unregistered fictitious name and is, therefore, invalid. However, the arbitration agreement expressly states that it is between the purchaser and "the Taylor Automotive Group, which includes, Taylor Cadillac . . . ." (Doc. 10, Ex. A). This wording in the contract indicates that McCreary entered into an arbitration agreement that included the named defendant, Taylor Cadillac.

---

[1] As a part of her argument, McCreary also asserts that the claims she has regarding Taylor Cadillac's use of a fictitious name that is now registered to her falls outside of the scope of the arbitration agreement. We will address this assertion under the third assignment of error where this same argument is raised again and more fully elucidated.

{¶28} In summary, McCreary commenced and maintained an action against a defendant that was an entity named in the arbitration agreement at issue. Thus, contrary to McCreary's assertions, Taylor Cadillac did not seek to enforce an arbitration agreement through an unregistered fictitious name in this case. For these reasons, we conclude that this argument is without merit. Accordingly, the second assignment of error is overruled.

### Third Assignment of Error

{¶29} McCreary argues that the claims she raised regarding Taylor Cadillac's continued use of the name "Taylor Kia of Lima" does not fall within the scope of the arbitration agreement.

### Legal Standard

{¶30} "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" because "arbitrators derive their authority to resolve disputes" from the consent of the parties. *Ohio Council 8 v. Marion*, 2016-Ohio-1144, ¶ 14 (3d Dist.), quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-650 (1986). Thus, in deciding what matters are subject to arbitration, "[t]he overarching issue is whether the parties agreed to arbitrate the issue." *Academy of Medicine of Cincinnati*, 2006-Ohio-657, ¶ 19.

{¶31} Where a dispute exists over the scope of an arbitration agreement, courts must first examine the language of the relevant provision. *U.S. Bank Natl.*

*Assn. v. Allen*, 2016-Ohio-2766, ¶ 31 (3d Dist.). "[A] proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Alexander v. Wells Fargo Financial Ohio 1, Inc.*, 2009-Ohio-2962, ¶ 24, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003).

Standard of Review

**{¶32}** Appellate courts review a decision as to whether a party has agreed to submit a particular claim or issue to arbitration de novo. *Fries v. Greg G. Wright & Sons, LLC*, 2018-Ohio-3785, ¶ 38 (1st Dist.); *Portnoy v. Thryv Yellow Pages*, 2024-Ohio-5977, ¶ 13 (6th Dist.); *Crider v. GMRI, Inc.*, 2020-Ohio-3668, ¶ 10 (8th Dist.). De novo review is conducted independently without deference to the decision of the trial court. *In re Baughman Irrevocable Trust*, 2025-Ohio-1892, ¶ 17 (3d Dist.).

Legal Analysis

**{¶33}** In the sixth claim in her complaint, McCreary requested an injunction and damages for Taylor Cadillac's use of a fictitious name that is registered to her. On appeal, she argues that this claim does not fall under the arbitration agreement. The scope of the arbitration agreement is set forth in the following provision:

> Binding arbitration shall include all disputes whether based upon contract, tort, state or federal statute laws or otherwise, and whether for money damages, penalties, declaratory relief, or equitable relief *arising out of or in any way related to this consumer transaction*. Binding arbitration shall be used to resolve all claims arising from the purchase or lease of the vehicle, financing, warranties, repairs, attempting to obtain financing, the purchase or any optional insurance,

-14-

service or maintenance agreements, or aftermarket products, or any document or relationship established in this transaction or related transaction regardless of whether the transactions were consummated.

(Emphasis added.) (Doc. 10, Ex. A). In the transaction referred to in this provision, McCreary sought to purchase a vehicle from Taylor Cadillac. The sixth claim in the complaint does not arise from and is not related to McCreary's attempted purchase of a vehicle. Rather, this claim is a separate matter that could be pursued independently of the other claims in the complaint that address the consumer transaction at issue. Since this claim does not fall within the scope of the arbitration agreement, this claim should not have been dismissed and sent to arbitration. Accordingly, the third assignment of error is sustained.

*Fourth Assignment of Error*

**{¶34}** McCreary argues that the trial court erred in enforcing an arbitration agreement that was unconscionable.

Legal Standard

**{¶35}** "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 32, quoting R.C. 2711.01(A). "Unconscionability is a ground for revocation of a contract." *Id*. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Hayes*, 2009-Ohio-2054, ¶ 20.

{¶36} An assessment of whether a contract is procedurally unconscionable involves consideration of "the circumstances surrounding the contracting parties' bargaining . . . ." *Hayes* at ¶ 23, quoting *Taylor* at ¶ 44. "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes*, 2009-Ohio-2054, ¶ 33. *See Zellner v. Prestige Gardens Rehabilitation and Nursing Center*, 2019-Ohio-595, ¶ 14 (3d Dist.)

{¶37} Importantly, "[a] party challenging an arbitration agreement must prove a quantum of both procedural and substantive unconscionability." *Hayes* at ¶ 30. Thus, "the failure to prove one of the prongs alleviates the necessity to review the remaining prong." *Pearson v. ManorCare Health Servs.*, 2015-Ohio-5460, ¶ 32 (11th Dist.). *See JPMorgan Chase Bank, N.A. v. Gallabrese*, 2025-Ohio-733, ¶ 28 (7th Dist.); *Ohio Plumbing, Ltd. v. Fiorilli Construction, Inc.*, 2018-Ohio-1748, ¶ 30 (8th Dist.); *Okolish v. Town Money Saver, Inc.*, 2023-Ohio-2865, ¶ 12 (9th Dist.).

Legal Analysis

{¶38} In its brief, Taylor Cadillac points out that McCreary did not raise an unconscionability argument in her filings with the trial court. "This Court has long held that issues that were not, but could have been, raised in the trial court may not be raised for the first time on appeal." *Powell v. Airstream*, *Inc.*, 2019-Ohio-3034, ¶ 30 (3d Dist.). Since McCreary could have raised these arguments before the trial court, we conclude that she has forfeited these arguments on appeal.

{¶39} Further, we also note that McCreary does not raise any arguments on appeal to establish that the arbitration agreement at issue was substantively unconscionable, even though she has the burden of demonstrating both procedural and substantive unconscionability. *See Shearer v. VCA Antech, Inc*., 2011-Ohio-5171, ¶ 29 (10th Dist.). Accordingly, the fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶40} McCreary asserts that the arbitration agreement should not apply to GLS because it was not a party to the arbitration agreement and should not be considered as an assign of Taylor Cadillac.

Legal Standard

{¶41} In general, "parties not privy to a contract may not benefit from an arbitration agreement incorporated therein." *Fifth Third Bank v. Senvisky*, 2014-Ohio-1233, ¶ 12 (8th Dist.), quoting *West v. Household Life Ins. Co*., 2007-Ohio-845, ¶ 14 (10th Dist.). However, in certain situations, "nonsignatories may be bound to the arbitration agreements of others" through the operation of the general principles of contract law and agency law. *Miller v. Cardinal Management*, *Inc*., 2019-Ohio-2826, ¶ 24 (8th Dist.). Pursuant to these principles, courts have found that the successors or assigns of a party to an agreement can be subject to an arbitration provision contained therein. *See LeROI Intern., Inc. v. Gardner Denver Machinery, Inc*., 2004-Ohio-4163, ¶ 20 (3d Dist.); *Autovest,* 2025-Ohio-111, ¶ 20. *See also Riggs v. Patriot Energy Partners*, *L.L.C*., 2014-Ohio-558, ¶ 41 (7th Dist.).

Legal Analysis

**{¶42}** On appeal, Taylor Cadillac identifies two provisions in the arbitration agreement as the basis of its argument. First, this agreement states:

> Binding arbitration shall be used to resolve all claims arising from the purchase or lease of the vehicle, *financing*, warranties, repairs, *attempting to obtain financing* . . . , any document or relationship established in this transaction or related transaction regardless of whether the transactions were consummated.

(Emphasis added.) (Doc. 10, Ex. A). Second, the arbitration agreement states: "the term 'Taylor' shall encompass its employees, agents, owners, directors, officers or *assigns*, management company, consultants, and subsidiaries." (Emphasis added.) (Doc. 10, Ex. A).

**{¶43}** Based on these provisions, Taylor Cadillac asserts that McCreary's dispute with GLS is subject to arbitration because GLS was an assignee and was involved in the process of financing or obtaining financing for the transaction at issue in this case. In response, McCreary does not argue that her claims against GLS do not arise from financing, attempting to obtain financing, or the transaction involving the 2022 Kia K5. Rather, she only asserts that GLS does not qualify as an assignee of Taylor Cadillac and that arbitration agreement does not, therefore, apply to GLS.[2]

---

[2] In her complaint, McCreary stated that the purchase contract was assigned to GLS. However, in her response to the motion to compel arbitration, she disputed whether the contract was assigned and whether GLS qualified as an assignee.

**{¶44}** To resolve this dispute, we turn to the decision this Court reached in *LeROI Intern., Inc. v. Gardner Denver Machinery, Inc.*, 2004-Ohio-4163, ¶ 16-22 (3d Dist.). In this prior case, LeROI and Cooper Industries ("Cooper") entered into a purchase agreement with an arbitration provision that was binding on the successors and permitted assigns of the parties. *LeROI* at ¶ 3, 17. After this agreement was executed, Cooper created Gardner Denver Machinery Incorporated ("GDI") and transferred assets to this newly formed entity. *Id*. LeROI later filed suit against Cooper and GDI over a matter related to the purchase agreement. *Id*. at ¶ 4.

**{¶45}** In a motion to compel arbitration, "Cooper and GDI . . . jointly demanded arbitration with LeROI," asserting that GDI was a successor of Cooper. *Id*. at ¶ 19. However, LeROI disputed GDI's status as a successor. *LeROI* at ¶ 2, 17, 21. After the trial court stayed the proceeding pending arbitration, the issue on appeal was whether GDI's status was "an issue of arbitrability to be decided by the trial court, or . . . an issue of contract interpretation to be decide by the arbitrator." *Id*. at ¶ 18.

**{¶46}** Our analysis of this issue began by acknowledging that "GDI cannot exercise any rights under the contract, specifically arbitration, unless it is Cooper's successor or assign." *LeROI* at ¶ 17. We then noted that resolution of this question was "complicated" by the fact that Cooper and GDI "jointly demanded arbitration with LeROI." *Id*. at ¶ 19. This Court then determined

-19-

what is arbitratable is not static; it changes with the identity of the party seeking to enforce the arbitration clause. Cooper, as a signed party to the asset purchase agreement, has a contractual right to demand the arbitration of disputes involving LeROI's duty to indemnify Cooper. Furthermore, the successors of Cooper are also entitled to proceed under the asset purchase agreement. Therefore, Cooper is entitled to demand arbitration with LeROI to determine if, under the terms of the asset purchase agreement, GDI is Cooper's successor and to ascertain if Cooper retained any rights to indemnity. In this context, the issue of GDI's successorship is not an issue of arbitrability. Rather, the issue involves the interpretation of the terms of the contract as applied to the specific facts in these circumstances. This is an issue committed by LeROI and Cooper through their contract to arbitration instead of litigation.

GDI, however, is not entitled to demand arbitration with LeROI to determine its status as a successor of Cooper. LeROI has only agreed to arbitrate with Cooper and its successors or assigns. Before GDI has any right to demand arbitration with LeROI, it must first be determined that GDI is Cooper's successor or assign.

*Id*. at ¶ 19-20. Based on this reasoning, we concluded that the trial court did not err in staying this action while the issue of whether GDI qualified as Cooper's successor was decided in arbitration. *Id*. at ¶ 21.

{¶47} We find the appeal presently before this Court to be factually similar. In the instant case, McCreary and Taylor Cadillac entered into an arbitration agreement that included Taylor Cadillac's assigns. After McCreary filed this suit against Taylor Cadillac and GLS, the defendants jointly filed a motion to compel arbitration. However, the parties have disputed GLS's status as an assign of Taylor Cadillac under the arbitration agreement.

{¶48} We will follow our precedent in *LeROI* in deciding this dispute on appeal. Because Taylor Cadillac is an original party to the arbitration agreement, it has a right to demand arbitration and, therefore, to demand that the issue of whether GLS qualifies as an assign be arbitrated. *LeROI*, 2004-Ohio-4163, ¶ 19. The extent of GLS's rights under the arbitration agreement, if any, cannot be ascertained until the issue of whether it is Taylor Cadillac's assign has been determined in arbitration. *Id*. at ¶ 20. Thus, McCreary has not established that the trial court erred by referring GLS to arbitration alongside Taylor Cadillac at this juncture. Accordingly, the fifth assignment of error is overruled.

*Conclusion*

{¶49} Having found no error prejudicial to the appellant in the particulars assigned and argued in the first, second, fourth, and fifth assignments of error, the judgment of the Allen County Court of Common Pleas is affirmed as to these issues.

{¶50} Having found error prejudicial to the appellant in the particulars assigned and argued in the third assignment of error, the judgment of the Allen County Court of Common Pleas is reversed as to these issues.

{¶51} This cause of action is hereby remanded to the trial court for further proceedings consistent with this opinion.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

Case No. 1-24-67

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellees for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

 

John R. Willamowski, Judge

 

Juergen A. Waldick, Judge

 

William R. Zimmerman, Judge

DATED:
/hls