[Cite as *Verandah Properties, Inc. v. Ullman Oil Co., Inc.*, 2020-Ohio-1559.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| VERANDAH PROPERTIES, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2019-G-0213** |
| ULLMAN OIL COMPANY, LLC, et al., | : | |
| Defendants, | : | |
| KENNETH KOZAK, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2019 M 000249.

Judgment: Affirmed in part, reversed in part and remanded.

*David M. King*, King Law, LLC, 137 Main Street, Suite 1, Chardon, Ohio 44024 (For Plaintiff-Appellant).

*Owen J. Rarric, James M. Williams,* and *Mathew E. Doney*, Krugliak, Wilkins, Griffiths & Dougherty, 4775 Munson Street, N.W., P.O. Box 36963, Canton, Ohio 44735 (For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Verandah Properties, LLC ("Verandah"), appeals the trial court's order staying trial court proceedings pending arbitration. We affirm in part, reverse in part, and remand.

{¶2} According to its complaint, Verandah owns and operates a manufactured home park in Portage County, Ohio. In December of 2016, one of Verandah's tenants ordered heating oil, which leaked or spilled onto the ground. Verandah was advised by an Ohio EPA representative that it needed to promptly remediate the spill to avoid an evacuation. Verandah hired Sunpro, a company recommended by the EPA representative. Sunpro estimated its cost of service between $10,000 to $12,000. Verandah hired Sunpro and signed Sunpro's Emergency Response Agreement (ERA), which does not state the cost of services or how the cost would be calculated. The ERA is attached to Verandah's complaint. Sunpro ultimately billed Verandah $36,362.72.

{¶3} In February of 2019, S-Pro, LLC, an alleged successor of Sunpro, submitted a demand for arbitration with the American Arbitration Association ("AAA") seeking money owed by Verandah under the ERA. In March of 2019, Verandah filed its complaint with the trial court naming nine defendants, including the tenants of the mobile home, the oil delivery company, Sunpro and its alleged successors and owners, and Verandah's insurance company for subrogation purposes. S-Pro's demand for arbitration is also attached to Verandah's complaint.

{¶4} Appellees, four of the nine named defendants, including Savage Services Corporation, S-Pro, LLC, Enviroserve, Inc., and Kenneth Kozak, moved to stay the trial court proceedings under R.C. 2711.02 pending binding arbitration before the AAA, which Verandah opposed. The trial court stayed the litigation pending arbitration. Verandah moved for reconsideration, which was denied. Verandah appeals the trial court's decisions granting the stay and denying Verandah's motion for reconsideration. We granted Verandah a temporary stay of the arbitration pending appeal.

2

{¶5} It raises four assigned errors:

{¶6} "[1.] The trial court committed prejudicial error by failing to require the defendant-appellees to prove the existence of a valid assignment agreement.

{¶7} "[2.] The trial court committed prejudicial error by failing to require proof as to which, if any, of the defendants has standing to demand arbitration.

{¶8} "[3.] The trial court committed prejudicial error by failing to determine whether the arbitration clause is unconscionable.

{¶9} "[4.] The trial court abused its discretion by denying the appellant's request for an evidentiary hearing and the opportunity to conduct discovery."

{¶10} We collectively address Verandah's first and second assignments as they are interrelated. Verandah contends the trial court erred in staying the litigation pending arbitration absent proof of a valid assignment of Sunpro's rights under the agreement to appellee, S-Pro, LLC, and because there is no evidence that appellees have standing to pursue arbitration. It also claims that because there was no evidence of Sunpro's assignment of the ERA, the trial court should have permitted Verandah to conduct discovery and the court should have held a hearing on the matter.

{¶11} Ohio law strongly favors arbitration, and there is a presumption of arbitrability when a contract contains an arbitration provision. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 25; *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 5. R.C. 2711.02(B) governs stays of litigation pending arbitration and states:

3

{¶12} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, *upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration*, *shall* on application of one of the parties *stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement*, provided the applicant for the stay is not in default in proceeding with arbitration." (Emphasis added.)

{¶13} Thus, if one of the parties to an arbitration agreement asks a court to stay a case, the court must stay the litigation once the court is "satisfied" that the matter pending before it is governed by a written arbitration agreement. *Id.* Nothing in R.C. 2711.02(B) requires a hearing.

{¶14} "[A]n arbitration clause will be judicially enforced unless a court is firmly convinced that the clause is inapplicable to the dispute or issue in question. *Independence Bank v. Erin Mechanical* (1988), 49 Ohio App.3d 17, 550 N.E.2d 198. The issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon an examination of the contract. *Divine Constr. Co. v. Ohio-American Water Co.* (1991), 75 Ohio App.3d 311, 599 N.E.2d 388; *Gibbons-Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 517 N.E.2d 559." *Ervin v. Am. Funding Corp.*, 89 Ohio App.3d 519, 521, 625 N.E.2d 635 (12th Dist.1993).

{¶15} Thus, we generally accept the trial court's findings of fact but review the trial court's decision whether a controversy is arbitrable under a contract de novo. *Dunkelman*

4

*v. Cincinnati Bengals, Inc.*, 1st Dist. Hamilton No. C-040427, 158 Ohio App.3d 604, 2004-Ohio-6425, 821 N.E.2d 198, ¶ 20.

{¶16} Here, Verandah does not challenge that the dispute falls within the purview of the ERA and is thus arbitrable, but instead insists that appellees lack standing to enforce the contract.

{¶17} The trial court makes the following findings in its decision staying the case:

{¶18} "The Plaintiff opposes such a stay, arguing these Defendants lack standing to enforce such arbitration provision, or, at the very least, discovery is needed to determine the connection between such Defendants and the other named party to the Agreement, to wit: Sunpro. Plaintiff offers various theories as to why it believes none possess the requisite standing, including an assertion that the Agreement could not be assigned by Sunpro to any other entity or person. (This court notes that under Paragraph 6.2 of the Agreement, Verandah is prohibited from assigning the contract to others without the permission of Sunpro, but there is no similar express provision prohibiting Sunpro from assigning its rights under the Agreement. Normally, parties are free to assign their rights in contracts, absent an express prohibition against assignment, so Sunpro may well have validly assigned its rights under the Agreement to another. Moreover, this court does not agree with Plaintiff that Para. 6.19 prohibits assignments by Sunpro; that provision does not use the word 'assignment' at all and seems designed instead to prevent third parties from claiming rights by virtue of the Agreement.)

{¶19} "* * *

{¶20} "* * * If Verandah did not believe these moving Defendants had no connection to Sunpro, or responsibility for Sunpro's conduct, then it is hard to understand

5

why they have been made parties. If Plaintiff can however establish for the Arbitrator that these Defendants do not possess standing to enforce Sunpro's rights under the Agreement, then the arbitration will be presumably resolved in Verandah's favor, and Verandah's claims can thereafter be litigated in this court."

{¶21} As stated, Verandah filed suit against nine defendants, including appellees. Regarding appellees, Verandah's complaint alleges that EnviroServe was formerly known as Sunpro, Inc.; that Savage Services Corporation is a Utah Corporation; that Kenneth Kozak held himself out as the principal and authorized agent of Sunpro; and that S-Pro, LLC claims to have acquired the right to collect money allegedly owed by Verandah under its agreement with Sunpro.

{¶22} Verandah also contends that Kozak told it that the remediation would cost between $10,000 to $12,000 and that Sunpro is now known as EnviroServe, Inc. Verandah claims the remediation work was done in a negligent and unworkmanlike manner in breach of the agreement. Verandah learned that EnviroServe Inc. was subsequently acquired by Savage Services in 2016 or 2017. Verandah paid Sunpro $10,000 in 2017, and Verandah was subsequently notified that S-Pro, LLC was attempting to recover the balance of the money owed to Sunpro. Verandah nevertheless maintains in its complaint that S-Pro, LLC never established it had a right to recover under the ERA. Notwithstanding, S-Pro, LLC filed a demand for arbitration against Verandah with the AAA based on Verandah's agreement with Sunpro.

{¶23} The ERA states in pertinent part that it is an agreement between the client, Verandah Properties, LLC, and Sunpro. Paragraph 6.2 states: "Sunpro shall have the right to subcontract any or all of the work covered by the Agreement. Any assignment of

6

this Agreement or any rights hereunder by Client without written consent of Sunpro shall be void."

{¶24} Paragraph 6.19 states: "Each party to this Agreement intends that this Agreement will not benefit or create any right or cause of action in or on behalf of any Person other than the parties to this Agreement."

{¶25} Although Paragraph 6.2 precludes Verandah from assigning its rights without Sunpro's consent, there is no reciprocal obligation prohibiting Sunpro from assigning its rights and obligations under the contract. And as the trial court finds, Paragraph 6.19 is likely intended to preclude third-party beneficiaries under the ERA.

{¶26} Although Verandah concedes it signed the ERA, it argues that appellees lack standing to enforce the agreement because none were a party to it. While we agree that appellees were not a party to the agreement, the allegations in the complaint nevertheless make it evident that Verandah's claims against appellees arise under the ERA. And because the trial court was satisfied that the issues involved are referable to arbitration under a written agreement for arbitration, it was required to stay the case pending arbitration. We are likewise satisfied that the dispute falls under the ERA.

{¶27} Notwithstanding, the trial court's decision staying this case is not a final resolution of Verandah's standing argument. Verandah is still free to challenge appellees' authority to proceed under the agreement in the arbitration proceedings because "[t]he arbitrator is the final judge of both law and facts on issues encompassed by the agreement to arbitrate." *Bass Energy Inc. v. Highland Hts.*, 8th Dist. Cuyahoga No. 93698, 193 Ohio App.3d 725, 2010-Ohio-2102, 954 N.E.2d 130, ¶ 43, citing *Goodyear Tire & Rubber Co.*

7

*v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 522, 71 O.O.2d 509, 330 N.E.2d 703 (1975).

{¶28} Further, Verandah's motion for reconsideration and the decision denying it are nullities since Verandah's motion was filed after the trial court's final judgment staying the litigation. "The Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court and such motion is a nullity when entered after a final appealable order. (*Pitts v. Dept. of Transportation* [1981], 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, followed.)" *Consol. Rail Corp. v. Forest Cartage Co.*, 68 Ohio App.3d 333, 588 N.E.2d 263, paragraph 2 of the syllabus (8th Dist.1990).

{¶29} Regardless, the case Verandah relies on in its motion for reconsideration, *Liberty Credit Servs. Assignee v. Yonker*, 11th Dist. Portage No. 2012-P-0096, 2013-Ohio-3976, is distinguishable. In *Liberty,* a creditor filed suit in municipal court against Yonker to collect a debt on a credit card account. Yonker counterclaimed. The case was transferred to common pleas court and then the creditors sought to remove the case to federal court, which was denied. The trial court permitted Yonker to conduct discovery to challenge the assignment of the debt to Liberty and Liberty's standing to collect the debt. Thereafter, the creditors moved to stay the case pursuant to a written arbitration clause in the credit card agreement, which the trial court granted. *Id.* at ¶ 5-7. On appeal, however, this court disagreed and found that Liberty failed to establish it was the assignee, and as such, it could not rely on the arbitration clause. *Id.* at ¶ 19. We rejected Liberty's argument that its status as the assignee should be decided by the arbitrator explaining that "Liberty decided to file suit in court. Accordingly, the court must determine

8

whether they have a legal right to demand arbitration." *Id.* at ¶ 21. Under another assigned error, we also held that Yonker's creditors waived their right to arbitrate based on their decision to pursue the action in the court system. *Id.* at ¶ 28.

{¶30} Unlike *Yonker*, appellees here were named as defendants in the lawsuit. Appellees did not initiate this litigation or file counterclaims before moving the court to stay the case pending arbitration. Moreover, S-Pro, LLC had already instituted the arbitration proceedings against Verandah *before* Verandah instituted this case. Thus, our rationale in *Yonkers* is inapplicable.

{¶31} Based on the foregoing, Verandah's first and second assigned errors lack merit.

{¶32} Verandah's third and fourth assignments of error claim the trial court erred by not addressing its argument that the arbitration clause is unenforceable because it is unconscionable, and the court should have permitted discovery and conducted an evidentiary hearing to address this issue. We agree in part.

{¶33} As stated, an agreement to arbitrate is presumptively enforceable and valid. *St. Vincent Charity Hosp. v. URS Consultants, Inc.*, 111 Ohio App.3d 791, 793, 677 N.E.2d 381 (8th Dist.1996), quoting *Didado v. Lamson & Sessions Co.*, 81 Ohio App.3d 302, 304, 610 N.E.2d 1085 (1992). However, an arbitration agreement is not enforceable if it is unconscionable or if other "grounds * * * exist at law or in equity for the revocation of any contract." R.C. 2711.01(A).

{¶34} As Verandah contends, an allegation that the arbitration clause itself is unenforceable as unconscionable places the validity of the provision in issue and requires a court to determine enforceability before a court can grant a motion to stay. *Gaither v.*

9

*Wall & Assoc., Inc.*, 2nd Dist. Montgomery No. 26959, 2017-Ohio-765, 79 N.E.3d 620, ¶ 13. Thus, when a party opposing a motion to stay raised under R.C. 2711.02 challenges the arbitration clause as unconscionable, the *trial court* must determine whether the clause is unconscionable and cannot refer the issue for resolution by the arbitrator. *Id.*; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 42; *Battle v. Bill Swad Chevrolet, Inc.*, 140 Ohio App.3d 185, 192, 746 N.E.2d 1167 (10th Dist.2000) ("The trial court should have the first opportunity to address the existence or nonexistence of unconscionability.").

{¶35} However, an exception exists if the contract expressly reserves the issue of whether the claim is subject to arbitration to an arbitrator. *Gaffney v. Powell*, 107 Ohio App.3d 315, 668 N.E.2d 951, paragraph one of the syllabus (1st Dist.1995); *Albrechta & Coble v. Baumgartner*, 6th Dist. Sandusky No. S-03-006, 2004-Ohio-3906, ¶ 11-12. And "claims of unconscionability that relate to the contract generally, rather than the arbitration clause specifically, are [also] properly left to the arbitrator in the first instance." *Taylor Bldg. Corp. of Am., supra* at ¶ 42. Here, the arbitration provision does not expressly reserve the question of arbitrability for the arbitrator, and Verandah challenges the arbitration clause as unconscionable, not the contract in general.

{¶36} And as stated, the trial court did not address Verandah's unconscionability argument or its request for discovery and a hearing; instead the court stayed the case in its entirety pending arbitration. Thus, reversal and remand is required for the court to determine whether the arbitration clause is unconscionable. Verandah's third assigned error has merit.

{¶37} Further, because the trial court did not address Verandah's request for discovery and an evidentiary hearing, these issues remain for the trial court to decide in the first instance on remand. App.R. 12(A)(1)(a) (designating appellate court's authority as reviewing a trial court's judgment or final order).

{¶38} The trial court's decision is affirmed in part, reversed in part, and remanded. The temporary stay of the arbitration pending appeal is lifted.

TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.