[Cite as *Autovest, L.L.C. v. Hicks*, 2025-Ohio-111.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

AUTOVEST, LLC,                                              :

    Plaintiff-Appellee,                              :

    v.                                                          :                    No. 113409

ANDREW HICKS,                                            :

    Defendant-Appellant.                        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** January 16, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-22-966925

---

***Appearances:***

Gertsburg Licata Co., LPA, Victor A. Mezacapa, III, and Maximilian A. Julian, *for appellee* The LGM Co., Inc.

Frederick & Berler, LLC, Ronald I. Frederick, and Michael L. Berler; DePledge Law Office, Inc., and Laura A. DePledge; Weisman, Kennedy & Berris Co., L.P.A., and Daniel Goetz, *for appellant*.

ANITA LASTER MAYS, J.:

{**¶1**} Defendant/third-party plaintiff-appellant Andrew Hicks ("Hicks") appeals the trial court's decision granting the third-party defendant-appellee The

LGM Company's ("LGM") motion to stay proceedings and compel arbitration. Hicks asks this court to reverse the trial court's decision. We affirm the trial court's granting of the motion and remand for further proceedings.

## I. Facts and Procedural History

{¶2} In December of 2015, Hicks purchased a vehicle from LCA Auto Wholesaler, Ltd. ("LCA") and took an assignment of rights under the Retail Installment Sale Contract ("the RISC") from LCA. LGM financed the vehicle, but Hicks defaulted on the monthly payments. LGM repossessed the vehicle in January 2017. The vehicle was sold at auction, and Hicks's account had a deficient balance.

{¶3} On March 20, 2017, LGM sold Hicks's debt to a third-party collection agency, Bayview Solutions, LLC ("Bayview"). On March 28, 2017, Bayview sold the account to Autovest, LLC ("Autovest"). On February 24, 2020, Autovest filed a complaint against Hicks in the Bedford Municipal Court for Hicks's breach of the RISC and claimed damages in the amount of $10,704.07. On December 28, 2020, Hicks was served, and through his counsel, he answered the complaint on February 19, 2021.

{¶4} In addition to Hicks's answer, he also filed a counterclaim and third-party complaint against Autovest and LGM alleging that he received a defective written notice regarding the vehicle's auction in violation of Ohio's Uniform Commercial Code; his written notice of loan reinstatement rights violated Ohio's

Retail Installment Sales Act; and he was charged an excessive purchase under Ohio's Consumer Sales Practices Act. Hicks requested relief including economic, noneconomic, and statutory damages, attorney fees, and corrections to any credit reporting errors.

{¶5} On March 10, 2021, Autovest filed a motion to dismiss Hicks's counterclaim. On March 12, 2021, LGM was entered as a defendant on the counterclaims, and service was attempted, but not perfected, because the address was incorrect. On July 26, 2021, Hicks filed a motion for default judgment against LGM alleging that he perfected service on LGM on March 18, 2021. A hearing regarding Hicks's motion for default judgment was set on September 22, 2021. However, LGM did not become aware of the litigation until August 26, 2021.

{¶6} On August 19, 2021, the municipal court denied Autovest's motion to dismiss Hicks's counterclaim. On September 22, 2021, all parties attended a pretrial conference, and LGM was ordered to answer Hicks's third-party complaint and complete discovery within 60 days. A trial date was set for January 12, 2022.

{¶7} On October 6, 2021, Hicks requested a continuance of all proceedings including the January 2022 trial date, and the municipal court granted his request and set trial for February 10, 2022. On December 13, 2021, Autovest filed an instanter request for leave to move for partial summary judgment. On January 5, 2022, the municipal court denied the request.

{¶8} On January 14, 2022, Hicks filed a motion to amend his responsive pleading. In Hicks's amended pleading, he included a class action allegation, claiming that he was bringing this action on behalf of himself and four classes of other persons that were allegedly subjected to LGM's unfair and deceptive business practices. In Hicks's first counterclaim, he sought relief totaling $15,000, the maximum amount allowed by the municipal court. However, in his amended pleading, he sought relief on behalf of the class, which would exceed $500,000, far exceeding the jurisdictional limit of the municipal court.

{¶9} On February 9, 2022, LGM filed an opposition to Hicks's amended pleading. The trial court never ruled on LGM's opposition, but Autovest and Hicks agreed to a partial settlement. On March 1, 2022, as a result of the settlement, both Autovest and Hicks filed a dismissal of claims against each other. However, Hicks stated that his claims against LGM would continue.

{¶10} On June 6, 2022, Hicks filed a motion to transfer the matter from the municipal court to the court of common pleas. The municipal court granted the motion, and on August 3, 2022, the trial court began its proceedings for the case.

{¶11} On February 9, 2023, Hicks filed his second amended complaint. On March 3, 2023, LGM filed a motion to stay proceedings and compel arbitration. On March 15, 2023, Hicks filed a brief in opposition to LGM's motion. On November 6, 2023, the trial court granted LGM's motion to stay proceedings, stating, in part, in its journal entry:

This matter is before the court on defendant LGM Co., Inc.'s motion to stay proceedings and compel arbitration. The court finds defendant's motion well-taken and defendant's motion is hereby granted. It is hereby ordered that all proceedings in this action are stayed. The parties are hereby ordered to resolve their dispute through arbitration, as provided for in the parties' arbitration agreement.

Journal Entry No. 163569389 (Nov. 6, 2023).

**{¶12}** Hicks filed this appeal assigning three errors for our review:

1. The trial court erred in granting appellee's motion to arbitrate when appellee had no right to arbitrate the agreement at issue;

2. The trial court erred in granting appellee's motion to arbitrate when the appellee extinguished any right it had by assigning all of its rights to another party; and

3. The trial court erred in granting appellee's motion to arbitrate when appellee waived its alleged right by its litigation conduct.

## II. Standard of Review

**{¶13}** "'In general, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration under the abuse of discretion standard of review.'" *Smith v. Rezutek*, 2024-Ohio-5599, ¶ 5 (8th Dist.), quoting *Simmons v. Extendicare Health Services, Inc.*, 2016-Ohio-4831, ¶ 13 (5th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**{¶14}** However, the standard changes when the dispute involves a contractual interpretation. "Nevertheless, a trial court's decision granting or

denying a motion to compel arbitration or a motion to stay is subject to de novo review on appeal because such cases generally turn on issues of contractual interpretation." *Cuyahoga Supply & Tool, Inc. v. BECDIR Constr. Co.*, 2024-Ohio-1375, ¶ 8 (8th Dist.), citing *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, ¶ 13 (5th Dist.); *Hudson v. John Hancock Fin. Servs.*, 2007-Ohio-6997, ¶ 8 (10th Dist.); *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543, ¶ 7 (8th Dist.).

{¶15} "Because this issue involves a matter of contract interpretation, it is subject to de novo review." *Westlake Servs., LLC v. Chandler*, 2023-Ohio-3714, ¶ 23 (8th Dist.). *See, e.g., Little Aquanauts, L.L.C. v. Makovich & Pusti Architects, Inc.*, 2021-Ohio-942, ¶ 8 (8th Dist.) (stating that a de novo standard of review applies "when evaluating the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration"), citing *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 18 (8th Dist.).

## III. Law and Analysis

{¶16} In Hicks's first assignment of error, he argues that LGM has no right to arbitrate under the RISC agreement. Specifically, Hicks claims that the RISC contained an arbitration clause that was between Hicks and LCA, the seller of the vehicle. According to Hicks, the RISC does not include assigns and states that the RISC only grants arbitration rights to Hicks and LCA, not LGM.

{¶17} "Ohio has a strong public policy favoring arbitration of disputes, and there is a presumption favoring arbitration that arises when the dispute falls within

the scope of an arbitration provision." *Cuyahoga Supply & Tool, Inc.*, 2024-Ohio-1375, at ¶ 9 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 25-27 (12th Dist.). "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.*, quoting *Sebold v. Latina Design Build Group, L.L.C.*, 2021-Ohio-124, ¶ 10 (8th Dist.), citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

{¶18} "We note, however, that 'parties cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration.'" *Cuyahoga Supply & Tool, Inc.* at ¶ 10, quoting *Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, 2008-Ohio-1820, ¶ 15 (8th Dist.), citing *Piqua v. Ohio Farmers Ins. Co.*, 84 Ohio App.3d 619, 621 (2d Dist. 1992); *St. Vincent Charity Hosp. v. URS Consultants, Inc.*, 111 Ohio App.3d 791, 793 (8th Dist. 1996); *Shumaker v. Saks, Inc.*, 2005-Ohio-4391, ¶ 13 (8th Dist.).

{¶19} "As our review is de novo, we conduct our own examination and interpretation of the contract and arbitration provision." *Cuyahoga Supply & Tool, Inc.* at ¶ 12. Hicks claims that the arbitration agreement contained in the RISC did not grant arbitration rights to assigns and LGM is an assigned party. The arbitration clause located within the RISC states, in part:

> Either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial. If a dispute is arbitrated, you will give your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation

of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights that you and we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase condition of the vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be solved by neutral binding arbitration and not a court action.

RISC p. 2.

**{¶20}** The RISC clearly states that any claim or dispute between Hicks and any assigns, whether they signed the contract or not, be solve by neutral binding arbitration and not a court action. This arbitration clause clearly defines the types of claims that can be arbitrated as well as the parties that can be subject to the agreement, including Hicks, LCA, LCA's employees, agents of LCA, successors, assigns, or third parties who did not sign the contract. "Moreover, Ohio courts have also recognized that a third-party beneficiary, although a nonsignatory to contract, may be bound to an arbitration agreement." *Javorsky v. Javorsky*, 2017-Ohio-285, ¶ 11 (8th Dist.), citing *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am.*, 2009-Ohio-5699, ¶ 18 (8th Dist.).

**{¶21}** Hicks agrees that LGM is an assigned, and therefore, we determine that the arbitration agreement covers disputes between assigns.

**{¶22}** Therefore, Hicks's first assignment of error is overruled.

**{¶23}** In Hicks's second assignment of error, he argues that LGM extinguished any right it may have had to arbitrate because LGM assigned all of its rights to another party. LGM financed the vehicle, but Hicks defaulted on the monthly payments, and LGM repossessed the vehicle in January 2017. The vehicle was sold at auction, and Hicks's account had a deficient balance. On March 20, 2017, LGM sold Hicks's debt to a third-party collection agency, Bayview, who sold the account to Autovest.

**{¶24}** Hicks contends that because LGM sold the debt to Bayview, LGM extinguished any rights it had under the RISC. However, LGM argues that the language in the purchase agreement clearly expresses its existing rights and obligations include not only indemnification rights, but also an express right to recall sold accounts, as well as a restriction on subsequent transfers that inheres to LGM's benefit to the detriment of all subsequent transferees per RISC:

> **Purchaser may** sell, transfer ownership, **or assign** ownership of the Accounts, or otherwise assign its right or delegate its duties under this Agreement, **to any third-party provided** that the terms and conditions of this agreement are imposed on any subsequent Purchaser.

(Emphasis in original.) Purchase Agreement 6, at sec. 14.

**{¶25}** Furthermore, LGM also reserved an express right to recall Hicks's account under the precise circumstances presented by the instant litigation:

The parties acknowledge that there may be various, legitimate business or legal reasons for Seller to repurchase an Account. Therefore, Seller may in its reasonable discretion without limitation, recall any Account, including but not limited to, accounts which Seller determines may be the subject of litigation, threatened litigation, adversarial administrative action, or which are the subject of a recall request by a Prior Holder, upon notice to Purchaser any time after the Closing Date as well as accounts which have made payments with transaction dates prior to the date the accounts were purchased by Purchaser. Upon receipt of such notice, Purchaser shall immediately cease all communications with the Customer and other collection activity, cause its tradeline to be deleted from any credit reporting agencies as may be applicable, or cause such tradeline to reflect the Account as having been recalled to Seller. Within five (5) business days of said recall notice, Purchaser shall return said Account to Seller. Seller shall pay to Purchaser the Purchase Price Percentage times the Unpaid Balance of the Account. This section shall survive the execution of this Agreement.

Purchase Agreement 8, at Sec. 23.

{¶26} LGM cites to this clause in the Purchase Agreement to demonstrate that it did not assign all of its rights away to subsequent third parties and that they reserve the right to recall the contract and enforce the arbitration agreement in the contract. Hicks disagrees and contends that even though LGM may have the right to recall his account, LGM failed to do so, and therefore the trial court erred when it stayed the proceedings to allow LGM to arbitrate.

{¶27} The trial court's decision in staying this case is not a final resolution of LGM's claims that they retain their rights under the RISC. *See Verandah Properties, LLC v. Ullman Oil Co., LLC*, 2020-Ohio-1559, ¶ 27 (11th Dist.). Hicks is still free to challenge appellee's authority to proceed under the agreement in the

arbitration proceedings because "[t]he arbitrator is the final judge of both law and facts on issues encompassed by the agreement to arbitrate." *Id.*, quoting *Bass Energy Inc. v. Highland Hts.*, 2010-Ohio-2102, ¶ 43, (8th Dist.), citing *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 522 (1975).

{¶28} "'[A]n arbitration clause will be judicially enforced unless a court is firmly convinced that the clause is inapplicable to the dispute or issue in question.'" *Id.* at ¶ 14, quoting *Independence Bank v. Erin Mechanical*, 49 Ohio App.3d 17 (8th Dist. 1988). "The issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon an examination of the contract." *Id.*, citing *Divine Constr. Co. v. Ohio-American Water Co.*, 75 Ohio App.3d 311 (10th Dist. 1991). *See, e.g.*, *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170 (8th Dist. 1986); *Ervin v. Am. Funding Corp.*, 89 Ohio App.3d 519, 521 (12th Dist. 1993).

{¶29} Upon review of the contract, we determined that the controversy is arbitrable under the arbitration provision; however, whether LGM has standing to enforce the arbitration provision will be determined by the arbitrator.

{¶30} Therefore, Hicks's second assignment of error is overruled.

{¶31} In Hicks's third assignment of error, he argues that LGM waived its rights to arbitration because of its litigation conduct. Hicks contends that LGM did not initially file a motion stay pending arbitration until after it extensively

participated in filing motions, answering complaints, and participating in the proceedings for more than two years from the date of service.

{¶32} "'The right to arbitration may be waived just like any other contractual right.'" *Blue Technologies Smart Sols, L.L.C. v. Ohio Collaborative Learning Solutions, Inc.*, 2020-Ohio-806, ¶ 13 (8th Dist.), quoting *Aljaberi v. Neurocare Ctr., Inc.*, 2019-Ohio-2181, ¶ 22 (5th Dist.). "'To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right.'" *Id.*, quoting *Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 25, citing *Donnell v. Parkcliffe Alzheimer's Community*, 2017-Ohio-7982, ¶ 21 (6th Dist.).

{¶33} LGM can explicitly waive its right to arbitration or can implicitly waive its right by failing to assert it or by participating in litigation to such an extent that its actions are completely inconsistent with any reliance on this right, resulting in prejudice to Hicks. *Bass Energy Inc.,* 2010-Ohio-2102, at ¶ 33 (8th Dist.). "The party claiming waiver must show that the party demanding arbitration acted inconsistently with the right to arbitrate." *Id.*, citing *U.S. Bank, N.A. v. Wilkens*, 2010-Ohio-262, ¶ 29 (8th Dist.).

{¶34} The record demonstrates that LGM was not aware of the proceedings until six months after Hicks filed his counterclaim against LGM and Autovest. LGM was ordered by the municipal court to file its answer and complete discovery.

LGM complied, but did not participate further in the proceedings before Hicks filed an amended complaint and filed a motion to move the case to the common pleas trial court from the municipal court. The trial court opened this case on August 3, 2022, and LGM filed its motion to stay on March 3, 2023, seven months after the case was initiated in the trial court. Between August 3, 2022, and March 3, 2023, LGM filed a notice of appearance on August 24, 2022, and participated in a telephone conference on February 2, 2023, where Hicks discussed that he was filing a second amended complaint. On February 9, 2023, Hicks filed his second amended complaint, and less than a month later, LGM filed its motion to stay proceedings and compel arbitration.

{¶35} Hicks's assertion that LGM extensively participated in the case for over two years before asserting its right to arbitration is not well taken by this court. Hicks filed a second amended complaint, which supersedes his original complaint. *See Fried v. Friends of Breakthrough Schools*, 2020-Ohio-4215, ¶ 12 (8th Dist.); *Recovery Funding, LLC v. Spiers*, 2020-Ohio-364, ¶ 28 (10th Dist.) ("[W]e note that the assertions made in Appellant's original complaint are no longer viable, Appellant having replaced his original complaint with an amended complaint."); *Michel v. Michel*, 2012-Ohio-4037, ¶ 18 (7th Dist.) ("The allegations of the amended complaint supersede those of the original complaint."); *State ex rel. Barr v. Wesson*, 2023-Ohio-3028, ¶ 30) ("an amended complaint supersedes the first-filed complaint").

{¶36} The facts in this case do not support Hicks's contention that LGM implicitly waived its right to arbitration by extensively participating in the litigation of the case.  Instead, LGM filed its motion to stay less than a month after Hicks filed his second amended complaint.  Between that time, LGM did not file any other motions or answers.

{¶37} Therefore, Hicks's third assignment of error is overruled.

{¶38} Judgment affirmed and remanded for further proceedings.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION);
KATHLEEN ANN KEOUGH, P.J., DISSENTS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING:

**{¶ 39}** I concur with the lead opinion, which affirms the trial court's decision to grant LGM's motion to stay proceedings and compel arbitration. I write to offer some clarification.

**{¶ 40}** Because the issue whether LGM has a right to arbitrate under the arbitration clause requires an interpretation of a contract, which is a question of law, our review of this issue is de novo. *See Cedar Brook Fin. Partners Holdings, LLC v. Schlang*, 2022-Ohio-3325, ¶ 16 (8th Dist.), citing *Cercone v. Merrill Lynch, Pierce, Fenner & Smith*, 2008-Ohio-4229, ¶ 14 (8th Dist.). As the lead opinion recognizes, the provision at issue explicitly extends to any claim or dispute between Hicks and "assigns" and encompasses claims or disputes with third-party nonsignatories to the contract. The parties herein are subject to this provision, and I agree that the controversy is arbitrable under the arbitration provision.

**{¶ 41}** I also am not firmly convinced by Hicks's argument that LGM extinguished its right to arbitrate under the RISC. Indeed, it is well recognized that Ohio and federal courts encourage arbitration to settle disputes, and an arbitration agreement will be enforced unless the court is firmly convinced that the clause is inapplicable to the dispute or that the parties did not agree to the clause. *Moore v. Houses on the Move, Inc.*, 2008-Ohio-3552, ¶ 22 (8th Dist.), citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 501 (1997); *Ervin v. Am. Funding Corp.*, 89 Ohio App.3d 519, 521 (12th Dist.1993). Generally, the arbitrator will serve as the final judge of both law and fact. *See Miller v. Gunckle*, 2002-Ohio-4932, ¶ 18, citing

*Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 42 Ohio St.2d 516, 522 (1975).

**{¶ 42}** Finally, when considering whether a party has waived a right to arbitration, we "apply an abuse of discretion standard due to the 'fact-driven' nature of the inquiry." *Bernat v. Ek Real Est. Fund I LLC*, 2024-Ohio-5043, ¶ 27 (7th Dist.), citing *Steese v. Canton Regency*, 2022-Ohio-4711, ¶ 12 (5th Dist.); *see also Lovano v. Setjo, LLC*, 2023-Ohio-461, ¶ 17 (8th Dist.). "To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right." *Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 25. Although the filing of an amended or second amended complaint does not necessarily reset the waiver clock or revive a right to arbitrate, it is a fact that may be considered in a review of the totality of the circumstances. In this case, LGM was not initially a party to the action; it engaged in limited motion practice and discovery in the municipal court proceedings; it had not filed any affirmative claims or dispositive motions in the matter; and it did not extensively participate in the litigation. Further, Hicks was granted leave to file an amended pleading; he sought to allege class claims and new causes of action; and the matter was transferred to the court of common pleas. There was no undue delay in requesting arbitration, nor was there any apparent prejudice. Because the totality of the circumstances does

not show that LGM acted inconsistently with its right to arbitrate, I am unable to find the trial court abused its discretion with regard to waiver.

{¶ 43} Accordingly, I concur and would affirm the trial court's decision.[1]

KATHLEEN ANN KEOUGH, P.J., DISSENTING:

{¶ 44} I respectfully dissent and would have found that LGM waived its right to arbitration.

{¶ 45} "When determining waiver, the 'essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate.'" *Debois, Inc. v. Guy*, 2020-Ohio-4989, ¶ 24 (8th Dist.), quoting *Phillips v. Lee Homes*, 1994 Ohio App. LEXIS 596, * 8 (8th Dist.). "To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right." *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 260 (2019).

{¶ 46} The majority finds that Hicks's second amended counterclaim started the litigation anew, precluding a finding that LGM participated in the litigation. Though an amended complaint/counterclaim substantively replaces an existing

---

[1] I recognize that appellant presented two assignments of error for review and that the lead opinion reviews the issues presented as three assignments of error. In any event, I am not persuaded by appellant's arguments and agree that the assignments of error should be overruled.

complaint/counterclaim, the substantial history of this matter remains relevant in determining whether waiver occurred.

{¶ 47} LGM appeared in the Bedford Municipal Court through counsel on August 26, 2021. Despite significant motion practice, discovery, and a set trial date, LGM never raised an argument concerning arbitration.

{¶ 48} In January 2022, Hicks filed his first motion to amend his answer and counterclaims based on information received in discovery. In February 2022, LGM opposed Hicks's motion to amend his counterclaim, specifically arguing that Hicks's motion to amend was filed "[l]ess than 30 days before trial" in a case that had been pending for "nearly two (2) years. . . ."

{¶ 49} On August 3, 2022, the case was transferred to the trial court, nearly a year after LGM initially appeared. Hicks filed his second amended counterclaim on February 9, 2023, and then, on March 3, 2023, LGM filed its motion to stay the proceedings and compel arbitration.

{¶ 50} In the motion to stay and compel arbitration, LGM claimed that it was unaware that it had a contractual arbitration right until it received a legible copy of the RISC document attached to the second amended counterclaim and realized that the document provided for arbitration. First, the RISC is the essence of this matter and forms the basis for the suit since LGM was the assignee of the RISC. For LGM to claim that it did not know about or have a legible copy of this document prior to February 2023 is specious. Second, the RISC was attached exhibit No. 5 to Hicks's

first motion to amend, filed in the Bedford Municipal Court on January 14, 2022. This document was available nearly a year prior, and at anytime during these proceedings, LGM could have filed its motion to stay and compel arbitration.

**{¶ 51}** I would find that the totality of the circumstances supports a finding that LGM waived its right to arbitration. I am particularly persuaded by the nature of the document containing the arbitration clause, LGM's active participation in the lawsuit, including but not limited to participating in discovery, opposing Hicks's first motion to amend in favor of going to trial, and remaining silent about the possibility of arbitration until 18 months after joining the lawsuit.

**{¶ 52}** For these reasons, I very respectfully dissent.